UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN KEITH BARNETT,<br><br>                             Petitioner,<br>v.<br>W.L. MONTGOMERY, Warden,<br>                             Respondent. | Case No.: 17-cv-00209-AJB-BLM<br><br>**ORDER:**<br><br>**(1) ADOPTING REPORT AND RECOMMENDATION;**<br><br>**(2) OVERRULING PETITIONER'S OBJECTIONS;**<br><br>**(3) DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS; AND**<br><br>**(4) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**<br><br>(Doc. Nos. 1, 29, 30) |

On February 1, 2017, Petitioner Brian Keith Barnett ("Petitioner"), a state prisoner proceeding pro se, filed his petition for writ of habeas corpus. (Doc. No. 1.) On August 29, 2017, Magistrate Judge Barbara Lynn Major filed a Report and Recommendation ("R&R") denying Petitioner's request for judicial notice and recommending that the district court

deny Petitioner's petition. (Doc. No. 29.) Petitioner filed an objection to the R&R on September 22, 2017. (Doc. No. 30.) For the reasons set forth more fully below, the Court **ADOPTS** the R&R in full, (Doc. No. 29), **OVERRULES** Petitioner's objections, (Doc. No. 30), and **DENIES** Petitioner's petition for writ of habeas corpus, (Doc. No. 1).

I.  **BACKGROUND**[1]

The following facts are taken from the California Court of Appeal's April 29, 2016, opinion in <u>People v. Barnett</u>, Appeal No. D065324:

> On the night of June 21, 2013, [Petitioner] and Frederick Morao had a loud argument at a residential hotel in San Diego. The two men were friends and [Petitioner] was temporarily staying with Morao. Morao had purchased methamphetamine from [Petitioner], and both had consumed "a lot" of "crystal meth" that day. The men argued about money [Petitioner] claimed Morao owed him for the methamphetamine.
>
> Earlier in the day, Morao had witnessed [Petitioner] hit Devon Clements (a friend of Morao's), with sufficient force to knock him down. During the argument, Morao told [Petitioner] "I ain't Devon. You ain't going to hit me like Devon." One of the two men said something like "We'll handle this," or "[l]et's hit the corner" and Morao walked away from the hotel. [Petitioner] followed behind. Morao carried the bottom part of a pool cue (approximately two feet long and two inches in diameter) concealed inside his sweater. He had it with him because he knew [Petitioner] carried weapons, including a serrated knife with a four-to-five inch blade. When [Petitioner] got close to Morao, Morao turned around, thinking [Petitioner] was going to "swing, hit me some kind" and "swung too," swinging the pool cue at [Petitioner]. [Petitioner] was able to disarm Morao of the pool cue before being struck. Morao then began throwing punches at [Petitioner], many of which landed.
>
> Clements followed slowly behind the men and saw [Petitioner] holding a cylindrical object about a foot and a half long during the fight. Clements initially stated he did not see [Petitioner] use the object on Morao, but later testified it did not

---

[1] The R&R also employs the same factual background provided by the California Court of Appeal's opinion.

make contact with Morao. Clements originally described the object as looking like a rolling pin and testified it was wider than the pool cue. Morao felt blows to his chest and stomach during the fight. The brief fight stopped when Morao felt like he "got enough hits in," and Morao and [Petitioner] separated. [Petitioner] walked away limping and yelling something. Morao joined Clements and said something like "I got him." The two men gave each other "daps," a celebratory gesture. Morao and Clements then walked back toward the hotel and Morao realized he was bleeding heavily. After Morao reached the lobby, the hotel security guard called an ambulance. Morao lost consciousness after the paramedics arrived and the next thing he remembered is waking up after surgery. Morao remained in the hospital for a week.

Morao had multiple stab wounds, at least one to the left side of his stomach and one on his back. A doctor told Morao there were 14 stab wounds. Clements also recalled hearing from a police officer that Morao was stabbed 14 to 16 times and might not make it. In addition, the investigating officer, Detective Tews, recalled hearing from police officers at the scene that Morao was stabbed 14 times, but was unable to personally verify the number.

Detective Tews interviewed Morao. Morao initially told Detective Tews he had been jumped by two Hispanic men. Morao had prior felony convictions including theft, possession of methamphetamine for sale, petty theft with a prior, and robbery. He used his "felon mentality" when first speaking with the police. After learning about surveillance video of the incident, Morao told Detective Tews the truth about what happened, explaining he made up the initial story because he did not want to be a rat.

Detective Tews also interviewed [Petitioner]. [Petitioner] denied stabbing Morao. [Petitioner] told Detective Tews Morao tried to hit him with a pool cue, he took the cue away, Morao ran and was then attacked from behind by a "Hispanic dude." [Petitioner] admitted he always carried a knife and he had a black, foot-long, serrated knife with him at the time of the incident, but denied using the knife on Morao.

On June 21, 2013, Morao was either 5'3" or 5'7 and weighed around 205 or 210 pounds. [Petitioner] is significantly taller than Morao. Morao felt threatened by the size disparity due

3

to [Petitioner's] advantage of height and "reach." Morao was very soft spoken and nervous during [Petitioner's] cross-examination. Morao does not like weapons, does not know anything about knives, and does not need a knife. However, [Petitioner] had promised to get Morao a knife.

*Section 1118 Motion for Acquittal*

At the close of the prosecution's case, [Petitioner] moved for acquittal under section 1118. He argued there was insufficient evidence to show he used a knife. He further argued evidence showed Morao had a concealed pool cue, which he attempted to strike [Petitioner] with, [Petitioner] took the cue away from him and Morao swung and hit [Petitioner] 20 times. [Petitioner] asserted he "had an absolute right to defend himself" under those circumstances. The trial court denied the motion, noting although evidence established Morao (the smaller individual) initially had a pool cue, any force Morao used after being disarmed "did not justify the deadly force that [Petitioner] used when he stabbed him in the gut." The court therefore ruled there was sufficient evidence for a reasonable jury to find [Petitioner] guilty.

*Defense Evidence*

[Petitioner] represented himself. [Petitioner] first called Dr. Murphy, a forensic psychologist, who testified about the fight or flight syndrome and similar responses of people using crystal methamphetamine. [Petitioner] also called San Diego Police Officer Carlos Munoz (Officer Munoz), who had written a report of the incident stating Morao was stabbed 14 times. Hospital staff had informed Officer Munoz of the 14 stab wounds, but the specific source was not identified in his report and he could not recall who it was. Officer Munoz did not take pictures of any of the stab wounds.

[Petitioner] took the stand. He described his relationship with Morao as one in which Morao depended upon him to "help him out" by supplying crystal methamphetamine and testified he would come from various locations in Southern California, at his own expense, to supply Morao. The fight with Morao occurred because Morao was angry that [Petitioner's] friends would not give him a cheap price on illegal drugs. When Morao said "Let's go handle it," [Petitioner] anticipated a fistfight and believed he "ain't got no problem," as he was "fixing to whip this little

chump's ass, you know, for crossing me up, plain and simple." [Petitioner] was not worried about fighting the younger Morao, a "guy in his prime," because "[m]ost youngsters these days, they don't even know how to sling the fist. They can't even fight. You know, I [was] brought up using my hands to defend myself."

[Petitioner] was attacked by Morao and "just defended [him]self." After [Petitioner] took the pool stick away from Morao, Morao ran and [Petitioner] did not pursue him. At the time, [Petitioner] saw Clements was following behind, and thought he was going to try to help Morao, but was not worried about being "double team[ed]" by the men. [Petitioner] had a gun in one of his back pockets during the incident, but had no intention of using it. [Petitioner's] "big ol' knife" was in his other back pocket. [Petitioner] was "hit in the nose" by Morao, and there was some bleeding.

[Petitioner] testified he used only his fists on Morao and did not stab him. Instead, Morao was stabbed by a Hispanic male after [Petitioner] disarmed him and Morao ran off into the street. After [Petitioner] took Morao's weapon away, Morao "turned around and he got stabbed."

(Doc. No. 9-22 at 2–7.)[2]

After trial, the jury found Petitioner guilty of assault with a deadly weapon. (*Id*. at 2.) On January 29, 2014, the trial court sentenced Petitioner to seventeen years in state prison. (Doc. No. 9-12.)

On December 5, 2014, Petitioner appealed his conviction, arguing that the trial court committed reversible error by (1) denying his motion for acquittal under section 1118.1 because there was insufficient evidence to find Petitioner did not act in self-defense, and (2) prejudicially instructing the jury regarding self-defense after an attacker is disabled or danger ceases. (Doc. No. 9-19.) On April 29, 2016, the California Court of Appeal affirmed Petitioner's conviction. (Doc. No. 9-22.) On June 3, 2016, Petitioner filed a petition for review in the California Supreme Court reasserting the same claims raised in his appeal.

---

[2] Page numbers refer to the CM/ECF page number and not the number on the original document.

5

1  (Doc. No. 9-23.) On July 27, 2016, the Supreme Court of California denied the petition for review without any discussion. (Doc. No. 9-24.)

On January 29, 2014, Petitioner filed a petition for Writ of Habeas Corpus in the California Court of Appeal arguing that (1) his Faretta rights to due process and equal protection were violated when the county jail made decisional and statutory law available via a "kiosk" separate from the desktop with a word processor and denied him access to confidential legal phone calls and black ink pens, and (2) the thumb drive and media disc provided by the prosecution did not function, he could not contact the court clerk to calendar a hearing or obtain sufficient copies of documents for service, and the prosecutor had denied receiving his motions. (Doc. No. 9-25.) On January 31, 2014, the California Court of Appeal denied the Petition as untimely, explaining that Petitioner "should have brought his complaints to the attention of the trial court before—not after—he proceeded to trial and was convicted[.]" (Doc. No. 9-26.)

On May 3, 2016, Petitioner filed a second Petition for Writ of Habeas Corpus in the California Court of Appeal, arguing that (1) the prosecutor knowingly and intentionally withheld exculpatory evidence, or alternatively, destroyed it before trial and (2) the prosecutor knowingly elicited and permitted the introduction of false testimony. (Doc. No. 9-27.) On May 17, 2016, the California Court of Appeal denied the petition, noting that Petitioner demonstrated neither the materiality of the alleged undisclosed information nor that the police or prosecution were acting in bad faith. (Doc. No. 9-28.)

On August 25, 2014, Petitioner filed a Petition for Writ of Habeas Corpus in the California Supreme Court, arguing that (1) the prosecutor knowingly and intentionally withheld exculpatory evidence of a digital recording of the initial interview with witness Devon Michael Clements and (2) the California Court of Appeal failed to hold an evidentiary hearing on the prosecution's alleged withholding of evidence. (Doc. No. 9-31.) On November 9, 2016, the California Supreme Court denied the petition without discussion. (Doc. No. 9-32.)

///

## II. PROCEDURAL BACKGROUND

On February 1, 2017, Petitioner filed the present matter, his Petition for Writ of Habeas Corpus asserting five grounds for relief: (1) the prosecution knowingly and intentionally withheld the digital recording of statements of witness Devon Michael Clements in violation of his due process discovery rights; (2) the appellate court failed to order an evidentiary hearing on the prosecution allegedly withholding evidence; (3) arbitrary and capricious jail policies obstructed and interfered with Petitioner's exercise of his Faretta Rights; (4) the jail obstructed Petitioner's ability to produce his moving papers and did not provide him copies for lawful service via U.S. Mail; and (5) the trial court erred by denying Petitioner's motion for a judgment of acquittal based on insufficient evidence. (*See generally* Doc. No. 1.) Subsequently, Petitioner was granted in forma pauperis status. (Doc. No. 3.)

On April 4, 2017, Respondent filed his response and on May 10, 2017, Petitioner filed his traverse. (Doc. Nos. 8, 12.) On July 17, 2017, Petitioner filed a request for judicial notice. (Doc. No. 28.) Thereafter, on August 29, 2017, Magistrate Judge Major filed an R&R denying Petitioner's request for judicial notice and recommending that his petition be denied. (Doc. No. 29.) Petitioner then filed his objection to the R&R by the deadline set by the Court. (Doc. No. 30.)

## III. LEGAL STANDARDS

### A. Review of the Report and Recommendation

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district judge's duties in connection with a magistrate judge's report and recommendation. The district judge must "make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989). However, in the absence of timely objection(s), the court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b),

Advisory Committee Notes (1983); *see also United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

B. <u>Standard of Review Under 28 U.S.C. § 2254</u>

A petitioner in state custody pursuant to the judgment of a state court may challenge his detention only on the grounds that his custody is in violation of the United States Constitution or the laws of the United States. 28 U.S.C. § 2254(a); *accord Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), applies to § 2254 habeas corpus petitions filed after 1996. *See Lindh v. Murphy*, 521 U.S. 320, 322 (1997). Federal habeas relief is available only if the result reached by the state court on the merits is "contrary to" or "an unreasonable application" of Supreme Court precedent, or if the adjudication is "an unreasonable determination" based on the facts and evidence. 28 U.S.C. § 2254(d)(1)-(d)(2).

## IV. DISCUSSION

The law is well established that a district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Presently, Petitioner proffers three objections to Magistrate Judge Major's R&R: (1) that it incorrectly concluded that the State Appellate Court adjudicated ground one of Petitioner's application; (2) that Magistrate Judge Major misconstrued Petitioner's claim that the Appellate court did not review an audio recording; and (3) Magistrate Judge Major incorrectly concluded that the prosecution provided one audio recording of witness Devon Clements. (*See generally* Doc. No. 30.) The Court notes that Petitioner does not object to the R&R in regards to ground two through five of his petition, nor does he discuss the denial of his request for judicial notice. (*See generally id.*) Instead, Petitioner focuses solely on ground one—the prosecution allegedly knowingly and intentionally withholding exculpatory evidence. (*Id.*)

A. <u>Alleged Withholding of the Audio Recording</u>

The crux of Petitioner's objection is that he was not at any time prior to or during his state trial provided any opportunity to review any recording of witness Devon Michael

8

17-cv-00209-AJB-BLM

Clements' ("Clements") statements to San Diego Police detective Tews. (Doc. No. 30 at 2.) This occurred despite the duty of the prosecution to disclose evidence to Petitioner during his trial and despite the Superior Court's order to the Prosecution to provide the audio recording to him. (Doc. No. 40 at 4–5, 7.)

Under 28 U.S.C. § 2254(d) as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The prosecution's affirmative duty to disclose evidence favorable to a defendant can trace its origins to early 20th-century strictures against misrepresentation and is of course most prominently associated with this Court's decision in *Brady v. Maryland*, 373 U.S. 83, 83, S.Ct. 1194, 10 L.Ed.2d 215 (1963)." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995). *Brady* held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.

"[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal[.]" *Kyles*, 514 U.S. at 434. Instead the touchstone of materiality is a "reasonable probability" of a different result. *Id*. However, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of

9

confidence." *Id*.

In sum, for petitioner to prevail on his *Brady* claim he must show that (1) the evidence was favorable to the accused either because it was exculpatory or impeaching; (2) the evidence was suppressed by the State; and (3) the suppression resulted in prejudice. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Unfortunately for Petitioner, the crucial flaw with the objections he proffers is that Petitioner still fails to demonstrate the materiality of the Clements audio recording. *See United States v. Bagley*, 473 U.S. 667, 682 (1985) (holding that evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine the confidence in the outcome."). Instead, Petitioner focuses his objections on detailing how the appellate court did not review the audio recording, that the prosecutor allegedly failed to disclose the evidence, that Magistrate Judge Major was incorrect when she stated that Petitioner stated that he received a copy of the recorded interview, and that the materiality of the recording is not the issue. (*See generally* Doc. No. 30.)

The Court notes that it has carefully taken under consideration the various issues Petitioner has with the alleged Clements recording and does not downplay his qualms and concerns. However, Petitioner's ten page objection and its claim of prosecutorial misconduct cannot be distinct from a material determination. As Magistrate Judge Major discussed in great detail, when a prosecutor is accused of suppressing exculpatory evidence in violation of due process, the petitioner must show (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the issue of guilt or punishment. *Brady*, 373 U.S. at 87. Thus, other than claiming that the Clements recording "could have influenced the determination of the case," (Doc. No. 30 at 5), and that he "intended to use the recording for impeachment purposes," (*id*. at 7), Petitioner does not demonstrate how the alleged recording was favorable to his case. *See Benn v. Lambert*, 283 F.3d 1040, 1053 (2002) ("Evidence is deemed prejudicial, or

material, only if it undermines confidence in the outcome of the trial."); *see also Strickler*, 527 U.S. at 281 (holding that "there is never a real '*Brady*' violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.").

In coming to this conclusion, for Petitioner's benefit, the Court highlights that Petitioner was provided with notes from the interview with Clements and both the interviewing officer and witness testified at trial. (Doc. No. 9-28 at 1–2.) Moreover, the Court agrees with the appellate court that Petitioner's claim that the Clements recording may have included additional or contradictory information is "entirely speculative." (*Id*. at 2.)

Second, as detailed clearly in the R&R, Clements' trial testimony was consistent with the information that he provided during his June 21, 2013 interview, thus the information was not impeaching. (Doc. No. 29 at 13–15.) Finding no need to repeat the R&R's findings, the Court briefly summarizes that detective Tew's Investigator's Report from June 21, 2013, describes that Clements was awoken by Morao who was angry, that he followed Morao and Petitioner, Morao and Petitioner then began to fight by a tuxedo shop, he never saw a knife, and that after the fight Morao noticed that he was bleeding. (Doc. No. 16 at 19.) In comparison, during trial, Clements testified that Morao came by his room in an angry state, that he observed Petitioner and Morao argue as they walked down the street, that he saw Petitioner strike Morao with something, and that after the fight Morao realized he was bleeding. (Doc. No. 9-7 at 30–38, 48–49, 76–77, 82, 100–01, 104–06, 108, 138–39.) Consequently, comparing the two, the Court finds that Clements' testimony at trial and Detective Tews' June 21, 2013 Investigator's Report are consistent.

On a final note, the Court finds that Petitioner has failed to demonstrate that a recording actually existed. Both the prosecutor and detective Tews stated on the record that there is no recording of the June 21, 2013 interview of Clements and Petitioner does not provide any further evidence of such a recording in his objection. (Doc. No. 9-8 at 41–42; Doc. No. 9-3 at 28–29, Doc. No. 9-5 at 28–30.)

Based on the foregoing, despite Petitioner's various arguments, most of which are irrelevant to the matter at hand, Petitioner has not established the materiality of the Clements recording and thus his *Brady* violation fails. Accordingly, the Court **OVERRULES** Petitioner's objections.

## V. CONCLUSION

As explained in more detail above, the Court hereby (1) **ADOPTS** Magistrate Judge Major's R&R; (2) **OVERRULES** Petitioner's objections; (3) **DENIES** the Petition on the merits; and (4) **DECLINES** to issue a certificate of appealability.[3]

Dated: December 8, 2017

Hon. Anthony J. Battaglia
United States District Judge

---

[3] When a district court enters a final order adverse to the applicant in a habeas proceeding, it must either issue or deny a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability is required to appeal a final order in a habeas proceeding. *See id.* A certificate of appealability is appropriate only where the petitioner makes "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003). Under this standard, the petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).